**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TODD CHANEY and ERIC DELEON,

                                        Plaintiffs,

        v.                                                        No. 04-CV-136
                                                                      (LEK/DRH)

THOMAS KOUPASH, Correctional Officer;
TIMOTHY SMITH, Correctional Officer; TIMOTHY
J. BROCKWAY, Correctional Officer; ROBERT
MCCAULEY, Correctional Officer; MARK TOTSKY,
Correctional Officer; J. GREY, Correctional Officer;
CURT POIRIER, Correctional Officer; MARK
HURLEY, Correctional Officer; J. ALBERRY,
Correctional Officer; C. SULLIVAN, Correctional
Officer; R. COLLINS, Correctional Officer; A.J.

BROWN, Correctional Sergeant; KEVIN H. SMITH,
Correctional Sergeant; F. ABARE, Correctional
Sergeant; C. GOODMAN, Correctional Sergeant; D.
WHALEN, Correctional Sergeant; L. BROCKWAY,
Correctional Lieutenants; M. GOSSELIN, Correctional
Lieutenant; J. STODDARD, Correctional Lieutenant;
NICHOLAS DIBIASE, Correctional Lieutenant; JOHN
DOE I, Correctional Lieutenant; F. KRUGER,
Correctional Lieutenant; TIMOTHY QUINN,
Correctional Lieutenant; CHARLES KELLY,
Correctional Captain; WILLIAM PHILLIPS,
Superintendent; PATRICK VANGUILDER,
Superintendent; DAVID A. CARPENTER,
Superintendent; ROBERT EBERT, Superintendent;
JAMES PLESCIA, Superintendent; GEORGE B.
DUNCAN, Superintendent; MICHAEL MCGINNIS,
Superintendent; R. DOLING, Commissioner's Hearing
Officers; JOHN DOE 2, Commissioner's Hearing
Officers; REGINA HILLIER, Correctional Counselor;
DAVID ROBERTS, Senior Correctional Counselor;
SALLY REAMS, IGP Supervisor; DONALD SELSKY,
Inmate Disciplinary Program Director; ROBERT J.
MURPHY, Inmate Disciplinary Program Director;
MARGARET LITZENBERGER, Associate Librarian;
JEAN CLANCY-BOTTA, Librarian; STEPHEN
BERNARDI, Deputy Commissioner; GLENN S.
GOORD, Commissioner; THOMAS EAGEN, Director,

Inmate Grievance Programs; S. ROWE, Correctional
Captain; N. SOKOL, Correctional Lieutenant;
JUCKETT, Correctional Lieutenant; C. LACROIX,
Correctional Sergeant; D. NABOZNY, Correctional
Sergeant; T. LAPIER, Correctional Sergeant;
MOREHOUSE, Correctional Sergeant; PRAY,
Correctional Sergeant; FEOLA, Correctional
Sergeant; MICHAEL, Correctional Sergeant, P.
CORCORAN, Correctional Sergeant; RICHARD
POTTER, Deputy Superintendent; BARTLETT,
Deputy Superintendent; PAUL CORCORAN,
Deputy Superintendents; SANDRA DOLCE, Deputy
Superintendent; JAMES CONWAY, Superintendent;
GARY GREENE, Superintendent; ANDREW
HARVEY, Commissioner Hearing Officer; NANCY
MANCHELL, Superintendent's Hearing Officer; DON
SAWYER, Correctional Sergeant; JOHN DOE 3,
Assistant Inspector General; C. CARLTON,
Correctional Officer; RUSSELL GOSSELIN,
Correctional Officer; E. GREENWOOD, Correctional
Officer; R. MCLAUGHLIN, Correctional Officer; R.
BARDIN, Correctional Officer; M. O'BRIEN,
Correctional Officer; C. GRANGER, Correctional
Officer; C.O. POMAINVILLE; EUSTIS, Correctional
Officer; SENECA, Correctional Officer;
FLECKENSTEIN, Correctional Officer; ADAMY,
Correctional Officer; ZIMMERMAN, Correctional
Counselor; A. INGLESON, Mail Room Clerk; JULIE
DANIEL, IGP Supervisor; G. STRUEBEL, IGP
Supervisor; ANTHONY ANNUCCI, Deputy
Commissioner; K. BELLAMY, Deputy Commissioner;
and LUCIEN J. LECLAIRE, JR. Deputy
Commissioner,

                                    Defendants.
_____

**APPEARANCES:**                    **OF COUNSEL:**

TODD CHANEY
Plaintiff Pro Se
88-B-0634
Groveland Correctional Facility
7000 Sonyea Road
Sonyea, New York 14556

                        2

ERIC DELEON
Plaintiff Pro Se
96-A-6822
Southport Correctional Facility
Post Office Box 2000
Pine City, New York 14871

HON. ANDREW M. CUOMO                    ADRIENNE J. KERWIN, ESQ.
Attorney General for the                Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

   Plaintiffs pro se Todd Chaney ("Chaney") and Eric Deleon ("Deleon"), inmates in the

custody of the New York State Department of Correctional Services ("DOCS"), bring this

civil rights  action pursuant to 42 U.S.C. §§  1981, 1983, 1985, and 1986 alleging that

defendants, forty DOCS employees,[2] violated their constitutional rights under the First,

Fourth, Eighth, and Fourteenth Amendments.  Third Am. Compl. (Docket No. 116).

Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P.

---

   [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

   [2] Defendants Granger, Eustis, Seneca, and John Does 1-3 have neither been
served nor otherwise appeared in the present action.  See Docket Nos. 138, 150, 169
(summonses returned unexecuted); see also Docket Nos. 80, 102,181 (answers filed for
all defendants except Granger, Eustis, Seneca, and John Does 1- 3).  More than 120 days
have elapsed since the complaint was filed.  Accordingly, it is recommended that the
complaint be dismissed without prejudice as to these six defendants pursuant to Fed. R.
Civ. P. 4(m) and N.D.N.Y.L.R. 4.1(b). Additionally, no factual allegations have been made
against defendants Bellamy, Ebert, or Potter despite their names appearing in the caption
of the third amended complaint.   Therefore, the action should be dismissed as to these
three defendants for failure to state a claim in accordance with Fed. R. Civ. P. 12(b)(6).

3

56.  Docket Nos. 228, 237.  Plaintiffs failed to respond to the motion.[3]  For the following

reasons, it is recommended that defendants' motion be granted.


### I. Background[4]

Chaney and Deleon bring this action jointly alleging a series of events at various

correctional facilities.  Certain of their contentions concern both of them.  For example,

Deleon requested permission to share a cell with Chaney, the request was denied, and

Chaney unsuccessfully filed an administrative grievance challenging the denial on their

behalf.  Defs. Statement of Material Fact (Docket No. 228-27) ¶¶ 76-77, 127-29.  Other

contentions concern only one plaintiff as follows.


### 1. Deleon

Deleon has been incarcerated by DOCS since 1996.  Defs. Statement of Material Facts

---

[3] Chaney and Deleon were provided two extensions for filing opposition papers to defendants' motion.  Docket Nos. 229, 233.

[4]As noted, Chaney and Deleon did not oppose defendants' motion.  Dismissal "should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default."  Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).  Chaney and Deleon were so advised in defendants' Notice of Motion. Docket No. 228-1 (attaching "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" to Notice of Motion).  Moreover,  "[t]he fact that there has been no response to a . . . motion does not. . . mean that the motion is to be granted automatically."  Champion, 76 F.3d at 436.  Even in the absence of a response, defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law.  Id.  Because Chaney and Deleon has not responded, the facts as set forth in defendants' Statement of Material Facts (Docket No. 228-27) are accepted as true.  Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., No. 00-CV-1619, 2002 WL 449757, at *1 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) (citing Lopez v. Reynolds, 998 F. Supp. 252, 256 (W.D.N.Y. 1997)).

¶ 2.

## a. Great Meadow Correctional Facility[5]

On January 26, 2001, while Deleon was incarcerated at Great Meadow Correctional Facility ("Great Meadow"), defendant Koupash ordered Deleon out of the law clerk's office in the law library in accordance with facility rules.  Id. ¶ 35.  Deleon re-entered the law clerk's office after the directive to vacate and Koupash issued Deleon a misbehavior report charging him with disobeying a direct order, being out of place, and lying.  Id. ¶¶ 34-35.  Deleon pleaded guilty to disobeying a direct order, was found guilty of being out of place, and found not guilty of lying.  Id. ¶ 36.

On February 4, 2001, Deleon was issued a misbehavior report, by defendant Brockway, for wearing unauthorized jewelry, lying, refusing a direct order, and altering or forging a document.  Id. ¶ 42.  The charges stemmed from Brockway's observation of Deleon wearing a wedding ring and being unable to produce the requisite authorization forms permitting Deleon to wear the ring.  Id. ¶ 43.  After a disciplinary hearing, Deleon was found guilty of wearing unauthorized jewelry, making a false statement, and refusing a direct order.  Id. ¶ 44.  Additionally, Deleon was found not guilty of the other charges.  Id.

On August 2, 2001, Deleon was drug-tested based upon information provided to

---

[5] On behalf of Deleon, Chaney requested copies of the audio tapes from Deleon's disciplinary hearings.  Defs. Statement of Material Facts ¶¶ 155-56.  However, Deleon was transferred on the same day that Chaney made the request, the tapes were transferred with Deleon, and, therefore, the tapes were no longer located at Great Meadow.

5

defendant Grey by a confidential source.[6]  Id. ¶¶ 4-5.  Deleon's urinalysis was positive for

both marijuana and opiates.  Id.  ¶ 6.  A second, confirmatory test was performed later that

day and yielded the same results.  Id.  Deleon was issued a misbehavior report by Grey

charging him with the use of a controlled substance.  Id.  ¶¶ 7-8.  During the subsequent

disciplinary hearing,[7] Deleon was found guilty of all charges.  Id.  ¶ 9.  On November 5,

2002, Deleon was drug-tested pursuant to DOCS random drug testing policy.  Id.  ¶ 10.

This urinalysis also was positive for marijuana and was confirmed by a second test

conducted later that day.  Id.  ¶ 11.  The following day, Grey again issued a misbehavior

report charging Deleon with unauthorized use of a controlled substance.  Id.  ¶¶ 12-13.  A

disciplinary hearing was held and Deleon was found guilty of all charges.  Id.  ¶ 14.

 Deleon filed one grievance[8] while incarcerated at Great Meadow requesting that he be

given permission to go to the law library in both the morning and evening at least once

every five working days and requesting an investigation into the employees that handle the

law library and library requests.  Id. ¶ 73.  The IGRC deadlocked but the Superintendent

---

 [6] "Inmates in the custody of [DOCS] may be drug tested, via urinalysis, (1) on a
scheduled basis, (2) upon suspicion that he is engaged in drug activity and (3) when his
name is randomly generated by [DOCS] to be tested."  Defs. Statement of Material Facts
¶ 297; see also N.Y. Comp. Codes R. & Regs. tit. 7, §1020.4(a).

 [7] DOCS regulations provide for three tiers of disciplinary hearings depending on the
seriousness of the misconduct charged.  A Tier III hearing, or superintendent's hearing, is
required whenever disciplinary penalties exceeding thirty days may be imposed.  N.Y.
Comp. Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (2007).

 [8] "The [Inmate Grievance Program (IGP)] is a three-step process that requires an
inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2)
appeal to the superintendent within four working days of receiving the IGRC's written
response, and (3) appeal to the CORC [Central Office Review Committee] . . . within four
working days of receipt of the superintendent's written response."  Abney v. McGinnis, 380
F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

determined that, after an investigation, "the law library . . . program was operating in a manner that ensures equal access to all inmates." Id. ¶ 74. The CORC affirmed the Superintendent's response. Id. ¶ 75.

### b. Auburn Correctional Facility

During Deleon's incarceration at Auburn Correctional Facility ("Auburn"), he was again tested for drug use pursuant to information provided by a confidential informant. Id. ¶ 15. Deleon's urinalysis was positive for marijuana and again confirmed later that day by a second urinalysis. Id. ¶ 16. A misbehavior report was issued by defendant Alberry for which Deleon was found guilty of using an unauthorized controlled substance. Id. ¶¶ 17-19.

### c. Southport Correctional Facility

On October 24, 2003, while Deleon was incarcerated at Southport Correctional Facility ("Southport"), an officer reported the odor of sweet smelling smoke emanating from Deleon's cell. Id. ¶ 20-21. Deleon was tested for drug use and the urinalysis was positive for marijuana. Id. ¶ 22. The sample was subjected to a second test the same day, which confirmed the presence of marijuana. Id. ¶ 22. Deleon was issued a misbehavior report by defendant Collins, charged with the unauthorized use of a controlled substance, and found guilty during the ensuing disciplinary hearing. Id. ¶¶ 23-25.

### 2. Chaney

Chaney has been incarcerated by DOCS since 1988. Id. ¶ 1.

**a. Great Meadow**

On January 26, 2001, Chaney "interfered with . . . Koupash's questioning of . . . Deleon in connection with [Koupash] ordering . . . Deleon out of the law clerk's office, and threatened to sue . . . Koupash." Id. ¶ 38.  A misbehavior report was issued by Koupash, charging Chaney with making threats, urging others to participate in an action detrimental to the facility, and interference with a facility employee.  Id. ¶ 37.  During the subsequent disciplinary hearing, Chaney stated "that there was a 'Clerks Only' sign above the library clerk's door."  Id. ¶ 39.  Deleon was not an inmate law clerk.  Defendant DiBiase found Chaney guilty of interference and not guilty of the other charges.  Id.  As a result of his multiple guilty verdicts, stemming from "violations that occurred in the law library while . . . Chaney was working as a law clerk," Chaney was removed from the position.  Id.  ¶ 40, 124. The disposition of the hearing and Chaney's removal from the program were both affirmed by defendant Superintendent Duncan.  Id.  ¶ 41.

On March, 27, 2001, Chaney filed a grievance seeking reinstatement as a law clerk. Id. ¶ 70; Kerwin Affirm. (Docket No. 228-2), Ex. O.  Defendant Deputy Superintendent Ebert denied the grievance "because . . . Chaney's removal from the program has been reviewed by defendant . . . Phillips and found to be proper."  Defs. Statement of Material Facts ¶ 71. "[R]emoval from [the] program is an acceptable punishment that may be given by a hearing officer upon a finding of guilt."  Id.  ¶ 125.   Chaney appealed, but the decision was affirmed by CORC.  Id. ¶ 72.

On May 30, 2002, Chaney was given a drug test "because a reliable confidential informant provided information that . . . Chaney was involved in drugs."  Id.  ¶ 131.  On June 17, 2002, Chaney filed a grievance contending "that he was drug tested by defendant

8

Sawyer as a form of harassment." Id. ¶ 78.  The Superintendent denied the grievance because DOCS has "broad discretion to drug test inmates . . . ." Id. ¶ 79.  On appeal, the denial of the grievance was affirmed by CORC.  Id. ¶ 80.

On August 27, 2002, Chaney was searched by defendant McCauley and found to have legal work belonging to other inmates in his folder.  Id.  ¶ 46.  Chaney then continued to the law library after being ordered to return to his cell.  Id.  McCauley issued a misbehavior report charging Chaney with the unpermitted possession of other's legal work, being out of place, and disobeying a direct order.  However, because McCauley confiscated all the unauthorized legal work, the charges were dismissed.  Id. ¶¶ 45, 47.

On September 13, 2002, Chaney filed a grievance contesting McCauley's search of his cell, discovery of other inmates' legal papers, and decision to send Chaney to pre-hearing confinement.  Id. ¶ 81; Kerwin Affirm., Ex. N.  The grievance was denied by Superintendent Duncan's representative, defendant Plescia, because the matter was addressed through the administrative appeals process.  Defs. Statement of Material Facts ¶ 82.  However, the denial also stated "that staff would be instructed to be attuned to imposing restrictions in accordance with [DOCS] policies." Id.  Chaney appealed, but the denial was affirmed.  Id. ¶ 83.

On April 15, 2003, Chaney filed a grievance alleging that he was placed in involuntary protective custody for approximately thirty days by defendant Gosselin.  Id. ¶ 84; Kerwin Affirm., Ex. X.  Gosselin initially approached Chaney stating that he "had received information from a confidential source that . . . Chaney's life was in danger because he failed to pay for drugs."  Chaney first signed "a waiver of voluntary protective custody." Defs. Statement of Material Facts ¶¶ 84-85, 151-52.  However, defendants believed that

Chaney needed involuntary protective custody until the completion of an investigation to determine the validity of the informant's statements.  Id. ¶ 153.  At the subsequent hearing, defendant Doling ordered that Chaney be released from protective custody as there was insufficient evidence to conclude that Chaney's life was sufficiently in danger.  Id. ¶¶ 86, 154.

In July 2003, the Deputy Superintendent of Security received an anonymous note detailing a sexual relationship between Chaney and another inmate.  Id. ¶ 49.  An investigation was conducted, leading Great Meadow staff to conclude that Chaney was having a relationship with inmate Watts.  Id. ¶ 50.  As a result of the investigation, Watts' cell was searched "and letters from . . . Chaney, detailing an ongoing relationship and a sexual act that occurred in the law library on July 22, 2003, were seized."  Id. ¶ 51.  Chaney was issued a misbehavior report and found guilty of two of the four charges.  Id. ¶¶ 48, 52.  The disposition was affirmed on administrative appeal by Selsky.  Id. ¶ 53.  Chaney then sought relief in an Article 78 proceeding[9] challenging the disciplinary hearing's disposition, but the complaint was denied.  Id. ¶ 54.

On February 10, 2004, Chaney left a folder on the floor of the mess hall which was subsequently searched by defendant LaCroix.  Id. ¶ 56.  The folder contained legal work belonging to other inmates.  Id.  Chaney was written a misbehavior report for unauthorized legal assistance and smuggling as Chaney did not have permission to possess the other inmates' legal work.  Id. ¶¶ 55, 57.  The unauthorized legal mail was seized, the remaining

---

[9]N.Y. C.P.L.R. art. 78 (McKinney 1994 & Supp. 2007) establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

documents were returned to Chaney, and he was found guilty of providing inmates with unauthorized legal assistance.  Id. ¶¶ 57-58.  The disposition was administratively affirmed by Selsky.  Id. ¶ 59.

On March 11, 2004, Chaney filed a grievance alleging that his personal property had been damaged and that at least one of his legal documents had been confiscated and read aloud by the corrections officers during the February 10 cell search.  Id. ¶ 87; Kerwin Affirm., Ex. PP.  Superintendent Duncan's representative denied the grievance because the cell search had been authorized and conducted in accordance with DOCS regulations.  Defs. Statement of Material Facts ¶ 88.  Chaney appealed the denial, but CORC affirmed the disposition and "advised . . . Chaney that he could make a property claim . . . ." for any items damaged during the search.  Id.  ¶ 89.

On April 5, 2004, Chaney filed a grievance requesting that he and Deleon's correspondence privileges be reinstated in light of their status as co-plaintiffs in the present action.  Id.  ¶ 90; Kerwin Affirm., Ex. QQ.  The Superintendent, through his designee, denied the request "because [DOCS] rules do not permit inmate-to-inmate correspondence unless the inmates are family member or co-defendants in a criminal action."  Defs. Statement of Material Facts ¶¶ 92, 148.  In this case, plaintiffs are neither related nor co-defendants in a criminal case and their "ability to correspond was not permitted once . . . Chaney left Great Meadow."  Id.  ¶ 149-50.  CORC affirmed the Superintendent's disposition.  Id.  ¶ 93.

Chaney alleges that in December 2004, LaPier held Chaney captive in the IGP office, struck him, and threatened to inflict further bodily harm upon Chaney if he continued to file grievances.  Third Am. Compl. ¶ 177.  Additionally, Chaney alleges that in early February

11

2005, he was physically assaulted and threatened that, if he continued to file grievances, LaPier and Morehouse would "bury him under the jail." Id. ¶ 183.

On March 11, 2005, Chaney was searched by LaPier and found to be in possession of legal materials which belonged to another inmate. Id. ¶ 61. Chaney admitted that he did not have permission to assist that inmate with legal matters. Id. As a result, Chaney was given a misbehavior report. Id. ¶ 61, 63. Pursuant to DOCS regulations and the information gleaned from the search earlier in the day, Chaney's cell was searched by defendants Carlton, Russell, Gosselin, and Greenwood.[10] Id. ¶ 61, 63, 132. The search was initiated, temporarily stopped and the cell locked, and then resumed. Id. ¶ 133-35. At all times, Chaney was present. Id. The search produced additional legal work belonging to twenty-eight inmates for whom Chaney admitted lacking authorization to assist with their legal work. Id. The legal work was confiscated,[11] Chaney was issued another misbehavior report, and a hearing was held at which Chaney was found guilty of providing unauthorized legal assistance. Id. ¶¶ 62-64.

On March 21, 2005, Chaney filed a grievance seeking reinstatement as an IGRC representative after he was suspended from the position[12] pending the outcome of an investigation into whether he had breached the code of ethics while acting as a

---

[10] "Inmates' cells, property and person may be randomly searched at any time." Defs. Statement of Material Facts ¶ 299.

[11] "Documents were given a cursory review by the frisking officers, and materials belonging to inmates other than . . . Chaney were placed in evidence bags, and then placed in an evidence locker." Id. ¶ 137.

[12] Chaney was terminated as an IGRC representative because he was found guilty of providing unauthorized legal assistance to other inmates and breaching the ethics agreement he signed prior to being elected as a representative. Id. ¶ 126.

12

representative.  Id.  ¶ 97; Kerwin Affirm., Ex. YY.  The Superintendent, through a designee,

denied the grievance as "Chaney was only temporarily suspended pending the

investigation, [and] continued to be paid during the time of his suspension [while] an

alternate representative covered . . . Chaney's duties during his suspension."  Defs.

Statement of Material Facts ¶ 98.  CORC affirmed the Superintendent's decision.  Id.  ¶ 99.

Additionally, a week later, Chaney filed another grievance claiming that the search of his cell

was motivated by LaPier's desire to harass Chaney.  Id.  ¶ 94.  The grievance was denied

by both the Superintendent and CORC.  Id.  ¶ 96.

On April 26, 2005, Chaney filed another grievance "after legal mail from the New York

State Appellate Division was returned by Great Meadow because [Chaney]'s name and

identification number did not match on the envelope from the court."  Id.  ¶ 100; Kerwin

Affirm., Ex. UU.  The IGRC granted the grievance and the Superintendent "responded . . .

by emphasizing that it is important for inmate names and identification number to match on

legal mail."  Defs. Statement of Material Facts ¶ 101.  Additionally, CORC ordered the

"Superintendent to implement a policy that all efforts be made to identify the inmate who is

to receive legal mail even if the inmate name and identification number do not match."  Id.

¶¶ 102, 146.  The Superintendent issued a directive to all staff incorporating the

suggestions provided by CORC.  Id.  ¶¶ 103, 147.


### b. Attica Correctional Facility

Sometime after the end of April 2005 but prior to the beginning of September 2005,

Chaney was transferred to Attica Correctional Facility ("Attica").  On September 15, 2005,

Chaney filed a grievance stating that the legal materials he received upon his transfer to

Attica "did not include all of the legal materials confiscated from him at Great Meadow."  Id. ¶ 104; Kerwin Affirm., Ex. TT.  The Superintendent eventually denied the grievance since an investigation demonstrated that Chaney was returned all of his legal materials minus those which belonged to other inmates which he was unlawfully possessing.  Defs. Statement of Material Facts ¶ 105.  CORC directed Chaney, upon appeal, to address any missing property claims through DOCS administrative procedures.  Id.  ¶ 106.

On December 5, 2005, Chaney filed another grievance alleging that defendant Fleckerstein confiscated and read Chaney's legal work as well as taking his typewriter ribbons.  Id.  ¶ 107; Kerwin Affirm., Ex. Q.  The Superintendent denied Chaney's grievance. Defs. Statement of Material Facts ¶ 108.  This disposition was affirmed by CORC.  Id.  ¶ 109.  Additionally, a few days later, Chaney filed another grievance alleging that his hearing officer, defendant Dolce, was withholding his legal material which was used as evidence at the hearing as well as having a conflict of interest which precluded her from effectively presiding over the hearing.  Id.  ¶ 110; Kerwin Affirm., Ex. R.  Both the Superintendent and CORC responded, directing Chaney to pursue his concerns over the alleged impartiality of his hearing officer through administrative appeals.  Defs. Statement of Material Facts ¶ 111.

Additionally, Chaney filed a grievance contending that his prior grievances had not been timely resolved by the IGP.  Id.  ¶ 112.  The Superintendent denied his grievance as his investigation demonstrated that all Chaney's prior grievances had received timely decisions. Id.  ¶ 113.  CORC also denied the grievance, stating that there was "no malfeasance on the part of the IGP staff."  Id.  ¶ 114.

Finally, Chaney filed another grievance contending that Dolce and Fleckenstein would not return his legal documents which he needed in order to comply with a court deadline.

14

Id.  ¶ 115.  The grievance was denied by both the Superintendent and CORC as they

"found that all legal documents not containing other inmates' names were already returned

to . . . Chaney."  Id.  ¶ 116.

This action followed.


## II.  Discussion

In their third amended complaint, Chaney and Deleon allege first that their rights were

violated under 42 U.S.C. §§ 1981, 1985, and 1986.  Second, Chaney and Deleon claim that

defendants violated their (1) First Amendment rights when defendants retaliated against

plaintiffs by tampering with plaintiffs' legal mail and grievances and by denying plaintiffs

access to the law library; (2) Fourth Amendment rights when conducted compulsory drug

tests and cell searches; (3) Eighth Amendment rights when defendants subjected Chaney

to excessive force; and (4) Fourteenth Amendment rights when defendants continually

issued Chaney and Deleon false misbehavior reports, utilized biased hearing officers during

disciplinary hearings, subjected Chaney to involuntary protective custody and pre-hearing

confinement, refused to reinstate Chaney to his position as a law clerk, denied Chaney the

disbursement of funds from his commissary account, and prevented Chaney from assisting

Deleon with his legal work.  The moving defendants seek summary judgment on all claims.


## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

material fact if supported by affidavits or other suitable evidence and the moving party is

entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

## B. Exhaustion

As a threshold matter, defendants contend that Chaney and Deleon have failed to

16

exhaust their administrative remedies.  Under 42 U.S.C. § 1997e(a), an inmate must

exhaust all administrative remedies prior to bringing any suits challenging prison conditions,

including federal civil rights cases.  Porter v. Nussle, 534 U.S. 516, 524 (2002); see also

Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006).  This exhaustion requirement applies to

all prison condition claims.  Porter, 534 U.S. at 532.  "[A]ny deprivation that does not affect

the fact or duration of a prisoner's overall confinement is necessarily a condition of that

confinement."  Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion

requirement also applies even if the administrative grievance process does not provide for

all the relief requested by the inmate.  Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has

recognized that "certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175

(2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)).  Exhaustion is

generally achieved through the IGP.  See N.Y.Comp. Codes R. & Regs. tit. 7, § 701.1 et

seq. (2001); see also note 8 supra.  However, when inmates fail to follow the IGP, a court

must conduct a three-part inquiry to determine if such failure is fatal to their claims.  A court

must consider whether

> (1) administrative remedies are not available to the prisoner; (2) defendants
> have either waived the defense of failure to exhaust or acted in such a way as
> to estop them from raising the defense; or (3) special circumstances, such as
> a reasonable misunderstanding of the grievance procedures, justify the
> prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the

action complained of."  Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v.

Churner, 532 U.S. 731, 738 (2001)).  The test to determine the availability of an

17

administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible.  Id. at 688.  Courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. 2007) (internal citations omitted).

Here, Chaney and Deleon were thoroughly familiar with the grievance program and its appeals process, filing grievances and appeals at least sixteen times since 2001.  Defs. Statement of Material Facts ¶¶ 70-116.  Chaney and Deleon filed and appealed grievances concerning (1) their legal mail being sent back to the courthouse preventing them from meeting a court deadline, (2) confiscation of Chaney's typewriter ribbons, (3) unlawful urinalyses and cell searches, (4) Chaney's biased hearing officers, (5) confinement in involuntary protective custody and pre-hearing segregation, and (6) refusal to reinstate Chaney as a law clerk and not allowing him to assist Deleon in his legal pursuits.  Id.

Defendants contend that, in light of plaintiffs' extensive knowledge of the IGP, plaintiffs failed fully to exhaust their remedies by failing to appeal or initially file a grievance for multiple claims.  Defs. Memo. of Law (Docket No. 28-28) at 39-41.  Specifically, Chaney and Deleon failed to file any grievances concerning (1) the two alleged excessive force incidents, (2) false misbehavior reports, (3) denial of Chaney's fund disbursement, and (4) Chaney's placement on no-work status.  The grievance program was available to plaintiffs, they chose to use it on multiple occasions, but they failed to use it for these four claims. Additionally, Chaney and Deleon have failed to proffer any special circumstances which would have rendered the grievance process futile or inaccessible to excuse their failures to

18

utilize the IGP.

Therefore, defendants' motion for summary judgment on this ground should be granted and these four claims should be dismissed in their entirety.

## C. First Amendment

### 1. Retaliation

Chaney and Deleon contend that defendants filed false misbehavior reports in retaliation for the grievances filed by them.  To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  "Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone."  Jackson v. Onondaga County, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Additionally, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id.  Conclusory allegations alone are insufficient.  Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Chaney and Deleon have failed to allege facts sufficient to support a retaliation claim.  First, it is virtually impossible to guess what, if any, constitutionally protected activity Chaney and Deleon were engaged in at the time of the filings of the

19

various misbehavior reports.  Arguably, assuming that Chaney and Deleon assert that each misbehavior report was issued in connection with their filing of grievances, it is clear that is an activity protected by the First Amendment.  However, their conclusory allegations, absent something more, are insufficient to maintain the present claim.  Id.

Second, even assuming the actions taken against Chaney and Deleon were motivated by retaliatory purposes, the misbehavior reports issued based upon (1) the urinalysis testing, (2) legal mail, (3) no-work status and termination as a law clerk and IGRC representative, (4) involuntary protective and pre-hearing confinement, (5) denial of Chaney assisting Deleon in future legal actions, and (6) denial of disbursement for the commissary account were all justified by proper purposes.  As discussed infra, all of these misbehavior reports were filed for valid reasons and did not violate constitutional provisions.  Both the drug tests and cell searches were conducted pursuant to New York State regulations and based upon probable cause.  Additionally, there were valid penological purposes for sending the legal mail back to the courthouse.  Furthermore, Chaney's termination from his status as a law clerk and IGRC representative, placement on no-work status, and denial of commissary disbursements were during the pendency of an investigation into the alleged professional malfeasance Chaney exhibited on multiple occasions while employed as a law clerk.  Similar to the cell searches and drug tests, the confinement prior to Chaney's disciplinary hearing and involuntary protection were based upon probable cause and pursuant to New York State regulations.  Moreover, the results of the overwhelming majority of disciplinary hearings and appeals[13] thereof were findings of guilt against Chaney and

---

[13] There were two exceptions were Chaney's grievances were granted as the grievance related to his thirty days in involuntary confinement resulted in his release from

Deleon.  See subsection G(3) infra.

Accordingly, defendants' motion should be granted on this ground.

## 2. Denial of Access to Courts[14]

### a. Legal Mail, Documents, and Grievances

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  In order to state a claim of denial of access to the courts, including those premised on interference with legal mail, a plaintiff must allege "that a defendant caused 'actual injury,' i.e. took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'"  Id. (citing Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)).  "[A]n isolated incident of mail tampering is usually insufficient to establish a

---

said confinement and his grievance as to the improper misdelivery of his mail resulted in CORC directing the Superintendent to "implement a policy that all efforts be made to identify the inmate who is to receive legal mail even if the inmate name and identification number do not match."  Defs. Statement of Material Facts ¶¶ 86, 102.  Despite the favorable grievance outcomes, the initial information which led to Chaney's involuntary protective custody, that his health and safety were in danger because he had failed to pay for his drugs, was a proper motive for confinement.  Additionally, even though a memorandum was circulated to identify inmates' legal mail, the Superintendent also "emphasiz[ed] that it is important for inmate names and identification numbers to match on legal mail," supporting the actions of the corrections officers in returning the misidentified mail.  Id. ¶ 101-102.

[14] To the extent that Chaney and Deleon assert a First Amendment claim pertaining to the confiscation of Chaney's typewriter ribbons, their contentions must be dismissed as baseless.  "[I]nmates, as a matter of law, do not have a constitutional right to a typewriter." Jamison v. Hayden, No. 03-CV-913 (FJS/DRH), 2008 WL 907316 at *5 (N.D.N.Y. Mar. 31, 2008).  Thus, by extension, there is no constitutional right to typewriter ribbons.  Such personal property claims can be addressed in an Article 78 proceeding.

constitutional violation . . . . Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." Id. (citations omitted); see also Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986) (explaining that an action may not give rise to damages if there was "no showing . . . that the inmate's right of access to the courts was chilled or the legal representation was impaired."); Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975) (holding that a single instance of mail tampering which did not lead the plaintiff to suffer any damage was insufficient to support a constitutional challenge).

Specifically, plaintiffs allege that defendants Smith, Kelly, and DiBiase prevented Deleon from filing a supplemental brief prior to a court-ordered deadline and was unable to appeal the denial of the Article 78 petition.  Third Am. Compl. ¶¶ 29, 37.  However, Chaney and Deleon have failed to allege or show how defendants' actions contributed to plaintiffs' damages.

Additionally, defendants K. Smith, Brown, Reams, Struebel, Eagen, and Feola allegedly interfered with plaintiffs' ability to grieve issues through the IGP.  Third Am. Compl. ¶¶ 38, 40-41, 54, 57-58, 170.  Defendants argue that Chaney and Deleon had no constitutional right to the IGP.  Without directly addressing that argument, it is noted that "the filing of prison grievances is a constitutionally protected activity." Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003).  Additionally, the intentional destruction of grievances is sufficient to allege a claim of retaliation. Soto v. Lacavino, No. 01-CV-5850 (JSM), 2003 WL 2128172 at *2 (S.D.N.Y. June 4, 2003).   However, these conclusory allegations, absent something more, are insufficient to establish a First Amendment violation.  Moreover, the sixteen grievances included in the pleadings illustrate that, contrary to plaintiffs' allegations, they

22

were able to participate in filing grievances and appeals.

Defendants Rowe, Carlton, Gosselin, Greenwood, LaPier, and Harvey allegedly withheld needed legal papers which caused Chaney to miss a state court deadline on April 23, 2005. Third Am. Compl. ¶ 205. Rowe "diligently attempted to locate the documents that . . . Chaney claimed were not returned to him" and when they were located, Rowe "returned the legal material that was initially not returned . . . ." Id. ¶ 242-43. However, these allegations are, at best, negligence on the part of defendants in losing Chaney's legal documents after his transfer. This is not enough to establish a First Amendment violation. Holmes v. Grant, No. 03-CV-3426 (RJH/RLE), 2006 WL 851753, at *12 (S.D.N.Y. Mar. 31, 2006) ("Mere negligence resulting in the loss of legal papers,. . . does not state an actionable claim [as] plaintiff must allege facts demonstrating that defendants deliberately and maliciously interfered with his access to the courts . . . [such as allegations] that the defendants deliberately stole his legal papers.") (internal quotations and citations omitted). Additionally, defendants came into possession of said papers as a result of Chaney providing unauthorized legal assistance to inmates. Defs. Statement of Material Facts ¶¶ 60-64. Thus, defendants actions were not malicious since the confiscation was to ensure penological safety and regulatory compliance. Furthermore, Chaney and Deleon have failed to state how defendants' actions contributed to plaintiffs' alleged damages or which demonstrable injuries plaintiffs suffered. Chaney has failed to prove any prejudice to any other legal proceeding. See Gonzalez-Cifuentes v. Torres, No. 04-CV-1470 (GLS/DRH), 2007 WL 499620, at *6 (N.D.N.Y. Feb. 13, 2007) (stating that plaintiff "identifies no particular case or claim which was impeded or how any defendant's conduct impeded his litigation of a claim or defense [and h]e has thus failed sufficiently to allege any actual injury

23

from this alleged incident, much less that [the] conduct was deliberate and malicious.")
(internal citations and quotations omitted).

Defendants McLaughlin and Bardin allegedly took a copy of plaintiffs' complaint from
Chaney's cell.  Third Am. Compl. ¶ 141.  However, Chaney and Deleon have successfully
filed three additional complaints which have superceded each preceding complaint.  Thus,
even if McLaughlin and Bardin read the initial complaint, Chaney and Deleon have failed to
assert any allegations as to how that conduct prejudiced them.  The same can be said of
the allegedly harassing and inappropriate conduct of defendants Nabozny, Morehouse, and
LaPier.  Id. ¶¶ 177, 183, 194-95, 202.  The record establishes that despite verbal threats
and alleged physical assaults, both Chaney and Deleon have been extremely successful in
filing multiple grievances at all the correctional facilities where they have been incarcerated
as well as filing and participating in motion practice in the instant litigation.  Thus, even
crediting plaintiffs' allegations, plaintiffs have neither alleged nor proven the infliction of
injury or damages which is a prerequisite to establish a First Amendment claim.

Defendants Bartlett and Zimmerman allegedly interfered with plaintiffs' access to the
courts by rescinding their inmate-to-inmate communication privileges after Deleon was
transferred from Great Meadow.  Id. ¶ 149, 237.  However, as discussed supra, these
conclusory allegations are insufficient to demonstrate that Chaney or Deleon suffered any
type of injury or prejudice from the conduct.  As the record reflects, despite the inability to
communicate directly, plaintiffs' have continued to participate actively in the instant litigation.

Lastly, defendants Ingelson and McGinnis returned mail that was improperly identified
back to the courthouse from which it originated instead of attempting to determine which
inmate should have received the correspondence.  Third Am. Comp. ¶ 208.  However,

24

Chaney and Deleon have failed to show a regular and unjustifiable pattern of interference because this is the only incident of alleged mail tampering which plaintiffs have identified. This isolated incident is insufficient to support a First Amendment claim. Additionally, plaintiff's have failed to identify any actual injury which resulted, as Chaney was provided with the mail and has yet to identify a specific legal proceeding in which his efforts were subsequently prejudiced.

Therefore, any claims concerning denial of access to the courts will not lie and defendants' motion as to these claims should be granted.

### b. Law Library

The Supreme Court has held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries . . . ." Bounds v. Smith, 430 U.S. 817, 828 (1977); see also Lewis v. Casey, 518 U.S. 343, 351 (1996). This right is not unlimited and "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis, 518 U.S. at 531. "[I]n order to fulfill the actual injury requirement . . . on a law library claim where there is a lack of access to the courts, the inmate must be pursuing [inter alia] . . . a civil rights claim pursuant to § 1983 to vindicate basic constitutional rights." Linares v. Mahunik, No. 05-CV-625 (GLS/RFT), 2006 WL 2595200, at *7 (N.D.N.Y. Sept. 11, 2006) (citations and internal quotations omitted). Thus, "to prove an actual injury, a plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials." Id. (citations omitted).

In this case, Chaney and Deleon  enjoyed the right to a law library.  However, due to overcrowding, their access was temporarily limited  as was that of every other prisoner. This was a regulation implemented equally across the entire prison population and only lasted as long as was necessary.  Defs. Mem. of Law at 4-5.  Thus, Chaney and Deleon still had access to the library, but that access was not unlimited.  Id.  Additionally, Chaney and Deleon fail to allege any facts sufficient to conclude that the limitation on library privileges caused them any actual injury.

Accordingly, defendants' motion for summary judgment should be granted on this ground.

### D. Fourth Amendment

The Fourth Amendment protects an individual's right "to be secure in [his or her] persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV.  Searches and seizures may be conducted in the presence of probable cause.  Id.

### 1. Drug Testing

Urinalysis testing constitutes a search subject to the Fourth Amendment.  See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 614 (1989); Harris v. Keane, 962 F. Supp. 397, 407 (S.D.N.Y. 1997).

> However, it is equally well-established that a prisoner's rights to be
> free from unreasonable searches is diminished once he or she
> steps through the prison door [and i]f the intrusion into one's
> privacy is found to be minimal, as it is here, and the expectation of

26

> privacy is minimal, as it is here, and there is a governmental reason
> advanced supporting a search, as is the case here, then the search
> will not violate one's Fourth Amendment rights.

Harris, 962 F. Supp. at 407 (internal citations and quotations omitted).  Pursuant to New

York Regulations, as long as the testing is not done with an intent to harass, a corrections

officer may order an inmate to submit to urine testing "[w]hen correctional staff has reason

to believe the inmate has used drugs . . . , when correctional staff receives information from

a source that the inmate is currently under the influence of or has recently used . . . drugs . .

., [or] as part of a computer-generated program for random testing of all inmates [or those]

inmates who have been found guilty of drug . . . related misconduct in the previous two-year

period."  N.Y.Comp. Codes R. & Regs. tit. 7, §1020.4(a)(1), (4), (7), (8); see also Rodriguez

v. Coughlin, 795 F. Supp. 609 (W.D.N.Y. 1992) (holding that two random drug tests within a

twelve-month period, both producing negative results, did not constitute a constitutional

violation).

    In this case, Deleon contends that the four urine samples he was forced to provide over

a two-year period constituted a constitutional violation.  Third Am. Compl. ¶¶ 50, 88, 118,

128.  The first and third drug tests were based upon information from a confidential

informant, providing the corrections officer with sufficient cause to order the urinalysis.

Defs. Statement of Material Facts ¶¶ 4-5, 15.  The second test was produced as a result of

the random computer printout.  Id. ¶ 10.  The final drug test was ordered after a corrections

officer smelled sweet smoke characteristic of marijuana.  Id.  ¶ 21.  All of these tests

returned positive results for marijuana.  Id.  ¶¶ 6, 11, 16, 22.  Moreover, Deleon cannot

allege that this conduct was harassing as he was tested twice a year and the tests produced

positive results.  This is identical to the Rodriguez case, where bi-annual drug testing

yielding negative results was insufficient to establish a constitutional violation except that all of Deleon's test results were positive.[15]  Thus, at all times defendants had sufficient cause to conduct the testing and these searches did not violate Deleon's Fourth Amendment rights.

Chaney also alleges that his lone drug test rose to the level of a constitutional violation. Id. ¶ 78.  This contention is without merit.  Chaney was ordered to submit to a urinalysis test pursuant to a valid provision of the New York State regulations as a confidential informant had provided defendants with information that Chaney was using illicit drugs. Id.  ¶ 131. Additionally, this single test during the year, despite its negative results, is insufficient to constitute harassment since this alleged infringement was less demanding than in Rodriguez which involved bi-annual random drug testing constitutional.

Accordingly, defendants' motion for summary judgment on this ground should be granted.


## 2. Cell Searches

An action commenced pursuant to § 1983 requires the "deprivation of any right[], privilege[], or immunit[y] secured by the Constitution" or laws of the federal government.  42 U.S.C. § 1983.  Thus, no action lies under § 1983 unless a plaintiff has asserted the violation of a federal right.  See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers

---

[15] To the extent that Deleon attempts to assert that defendants improperly dealt with his addiction because they did not mandate substance abuse treatment, it is noted that "[t]he claim to a constitutional right to treatment for narcotics addiction has no basis in either the provisions of the Constitution or the decisions of the courts . . . ."  Smith v. Follette, 445 F.2d 955, 961 (2d Cir. 1971); see also Doe v. Goord, No. 04-CV-570 (GBD/AJP), 2005 WL 3116413, at *16 (S.D.N.Y. Nov. 22, 2005).

Ass'n, 453 U.S. 1, 19 (1981). "[I]n and of itself, the unwarranted search of an inmate's prison cell is not a constitutional violation because the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell." Brown v. Goord, No. 04-CV-785, 2007 WL 607396, at *14 (N.D.N.Y. Feb. 20, 2007) (internal citations and quotations omitted); see also Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("hold[ing] that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell . . . " and thus the Fourth Amendment does not apply to cell searches); Tinsley v. Greene, No. 95-CV-1765 (RSP/DRH), 1997 WL 160124, at *7 (N.D.N.Y. Mar. 31, 1997) (Prisoner "assert[s] no cause of action [pertaining to the allegedly illegal search of his cell] based on an alleged violation of his Fourth Amendment rights."); Demaio v. Mann, 877 F. Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.") (citations omitted). However, "[s]uch an unwarranted search could become a constitutional violation . . . only if it was conducted in retaliation for Plaintiff's exercise of a First Amendment right." Brown, 2007 WL 607396 at *14.

Thus, because prisoners do not have a legitimate expectation of privacy in their prison cells, the only way the present claim may survive is if Chaney has alleged facts sufficient to support a retaliation claim. However, as discussed supra, Chaney and Deleon have failed to proffer facts sufficient to state a retaliation claim. Thus, any claim Chaney may have had under the Fourth Amendment is lost.

Accordingly, defendants' motion on this ground should be granted.

**E. Eighth Amendment**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. CONST. amend. VIII.

**1. Excessive Force**

The Supreme Court has established that inmates enjoy Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection."  Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262.  However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries.  Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9-10 (citations omitted).  "'Not every push or shove, even

if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting Hudson, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotations and citations omitted).

Liberally construing Chaney's allegations, it appears that there were two incidents of potential excessive force.  Chaney states that in December 2004, he was held captive in the IGP office while LaPier struck him and threatened further bodily harm if he continued to file grievances.  Third Am. Comp. ¶ 177.  Additionally, Chaney alleges that in February 2005, both LaPier and Morehouse "physically assaulted him in retaliation for his grievance and complaints about them, and informed him that, if he persisted . . . they would bury him under the jail."  Id. ¶ 183.  Chaney does not allege any resulting physical ailments or the need for any medical intervention.  In fact, the record shows that Chaney neither requested nor received medical attention after either of these alleged events.  Thus, these claims do not appear to state a serious injury or the exertion of anything more than the use of

31

de minimus force.  See James v. Coughlin, 13 F. Supp. 2d 403, 409-10 (pushing a prisoner back into his cell is not sufficient to state an Eighth Amendment claim); Gabai v. Jacoby, 800 F. Supp. 1149, 1155 (S.D.N.Y. 1992) (shoving an inmate into a chair resulting in a bruise is insufficient to state an Eighth Amendment violation).

Generally, the inability to establish the objective prong of the analysis subjects a claim to dismissal.  Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  However, even if Chaney has failed to prove a serious injury, his allegations may suffice to raise a question of fact as to whether defendants' conduct was undertaken with malice for the very purpose of causing harm to Chaney.  See Grifin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) ("the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] per se . . . whether or not significant injury is evident.' (quoting Blyden, 186 F.3d at 262)); Odom v. Dixion, No. 04-CV-889F, 2008 WL 466255, at *17 (W.D.N.Y. Feb. 15, 2008).   Therefore, Chaney's failure to meet this element of his claim does not alone mandate dismissal and the subjective prong must also be considered.

As to that prong, Chaney asserts that LaPier and Morehouse "trapped him" and "held him captive" in the IGP office while these confrontations transpired.  These actions of trapping an inmate, verbally harassing him, and then assaulting him without provocation or justification could reasonably be found repugnant to society's standards.  If credited, these assertions suffice to raise a question of fact whether LaPier and Morehouse acted with malice for the very purpose of causing harm to Chaney rather than with good faith or concern for restoring discipline or maintaining institutional safety.  As both LaPier and Morehouse have denied all contentions alleging they assaulted Chaney, there exists a genuine issue of material fact as to what actually transpired.

32

Accordingly, if the preclusive effects of plaintiffs' failure to exhaust these claims is rejected, defendants' motion on this ground should be denied as to LaPier and Morehouse.

### 2. Urinalysis Testing

Random urinalysis testing may also be asserted under the "Eighth Amendment right to be free from cruel and unusual punishment." Rodriguez, 795 F. Supp. at 613.  "To be cruel and unusual punishment, conduct . . . must involve more than ordinary lack of due care for the prisoner's interests or safety . . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by [the Eighth Amendment]." Kingsley v. Bureau of Prisons, 937 F.2d 26, 31-32 (2d Cir. 1991) (citing Whitley v. Albers, 475 U.S. 312, 319-21 (1986)).  However "[r]andom urinalysis seeks to secure a safer prison environment, so it is difficult to see how [that] . . . constitutes a lack of due care for the prisoner's interests or safety[; therefore,] . . . urinalysis testing, . . . conducted in accordance with established guidelines, cannot be said to constitute obduracy and wantonness." Rodriguez, 795 F. Supp. at 613 (internal quotations and citations omitted).

The only question that remains is whether defendants conducted the randomized drug testing pursuant to the established guidelines.  As there is no indication in the record that defendants did not comply with the New York State regulations, it is clear that the urinalysis testing did not constitute cruel and unusual punishment.

Accordingly, defendants' motion for summary judgment should be granted on this ground.

**F. Fourteenth Amendment**

**1. Due Process**

Chaney and Deleon contend that defendants violated their due process rights by filing, convicting, and sentencing Chaney and Deleon on false misbehavior reports, having a biased hearing officer, temporarily confining Chaney in involuntary protective custody and pre-hearing detention, refusing to reinstate Chaney as a law clerk and allowing him to provide Deleon with legal assistance, placing Chaney on "no-work" status, and temporarily denying Chaney fund disbursements.

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a SHU confinement alone is insufficient to establish an atypical and significant deprivation. The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in SHU as well as "the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be considered. Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998) (citing Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir.1997)).

34

**a. Biased Hearing Officer**

Prisoners have a constitutional right to have a fair and impartial hearing officer preside over their disciplinary hearings.  See, e.g., Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges . . .  [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted).   While the Supreme Court held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] . . ," the Second Circuit has held that the test is whether there was "'reliable evidence' of the inmate's guilt." Luna v. Pico, 356 F.3d 481, 487-88 (2d Cir. 2004); see also Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Although Chaney and Deleon  claim that they were not provided with impartial hearing officers, nothing in the hearing transcript or plaintiffs' submissions indicate that any of the hearing officers were biased in any regard.  Additionally, the findings produced during the investigations leading to the misbehavior reports, the regulations in question, and the information upon which defendants' relied all serve as reliable evidence supporting plaintiffs' convictions and sentences.

Additionally, plaintiffs' complaint alleges that they were precluded from calling additional witnesses during their hearings.  Third Am. Compl. ¶ 91.  However, "[i]t is well settled that an official may refuse to call witnesses as long as the refusal is justifiable [such as] . . . on the basis of irrelevance or lack of necessity." Scott v. Kelly, 962 F.2d 145, 146-47 (2d Cir. 1992) (internal quotations and citations omitted); see also Richardson, 833 F. Supp. at 152. Plaintiffs have not provided the names or identities of these witnesses whom they wished to

testify.  Thus, it is impossible to determine if the witnesses had relevant personal knowledge of the events.

Thus, defendants' motion should be granted on this ground.

### b. Temporary Confinement in Pre-Hearing and
### Involuntary Protective Custody

DOCS regulations authorize a prisoner to be placed in administrative segregation while awaiting the commencement of a pending disciplinary hearing or investigation or when it is requested by the inmate or determined by the facility that continued detention is required for the inmate's own protection.  See N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007) The Second Circuit has held that such confinement creates a protectable liberty interest. Tellier v. Fields, 280 F.3d 69, 81 (2d Cir. 2000).  However, the Warden's decision to place a prisoner in [administrative segregation] is discretionary as long as certain predicates are satisfied [because] a prisoner has no protected liberty interest that is violated when the Warden removes him or her from the general population."  Id. at 82.  "[T]he discretion surrounding this decision is not boundless . . . [and] certain hearings and reviews" are required.  Id.

First, Chaney must have suffered a harsh and atypical confinement to invoke the due process protections.  There is no indication here as to the duration of the pre-hearing confinement, but the involuntary custody only lasted approximately thirty days. Confinements in administrative segregation of less than thirty days will not suffice to demonstrate a protected liberty interest absent other extraordinary circumstances of the confinement demonstrating that it was atypical or significant for other reasons.  See Sandin,

36

515 U.S. at 485-86; Colon, 215 F.3d at 231; Thompson v. LaClair, No. 9:08-CV-37

(FJS/DEP), 2008 WL 191212, at *3 (N.D.N.Y. Jan, 22, 2008) (quoting Smart v. Goord, 441

F. Supp. 2d 631, 640 (S.D.N.Y.2006).  Thus, it appears that the length of time Chaney

spent in SHU was insufficient of itself to establish an atypical or significant hardship.

Second, absent other evidence of hardship conditions, "there are many similarities in the

treatment of inmates confined to SHU and the general inmate population." Vasquez v.

Coughlin, 2 F. Supp. 2d 255,,260 (N.D.N.Y. 1998).  Sandin noted two examples of

hardships that would qualify as atypical and significant: "a prisoner . . . be[ing] transferred

involuntarily to a state mental hospital for treatment of a mental disease . . . [and] the

involuntary administration of psychotropic drugs." Sandin, 515 U.S. at 479 n.4; see also

Vitek v. Jones, 445 U.S. 480, 493-94 (1980) (holding that while a criminal conviction

extinguishes an individual's right to be free from confinement, it "do[es] not authorize the

State to classify him [or her] as mentally ill and subject him [or her] to involuntary psychiatric

treatment without affording him [or her] due process protections.").  The record is devoid of

any evidence demonstrating that Chaney's stay in administrative segregation was in any

way different from that of other SHU inmates or inmates in the general population.

Additionally, there is no indication of any situation or circumstance which arose which is in

any way comparable to the examples cited in Sandin.

Third, defendants followed the procedural steps established in the regulations.  Upon

Chaney filing a grievance pertaining to his involuntary confinement in protective custody, he

was afforded a hearing and received a favorable disposition.  This does not demonstrate

that the Warden lacked sufficient cause to place Chaney in protective custody as an inmate

was in fact threatening Chaney's safety and well-being.  Additionally, when the Warden's

judgment was called into question, Chaney was afforded a hearing and eventually released back into the general population.

Accordingly, defendants should be granted summary judgment on any liberally construed claims Chaney and Deleon may have asserted on this ground.

### c.  Chaney's Termination as Law Clerk, Placement on No-Work Status, and Inability to Provide Legal Assistance

Chaney contends that he was denied due process when he was removed and not reinstated as a law clerk and when he was terminated as a law clerk and precluded from providing Deleon legal assistance.

First, "New York law does not give a prisoner any statutory, regulatory or precedential right to his prison job . . . [thus] the State commissioner or prison officials may provide jobs for prisoners" but no liberty or property interest results.  Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987).  Additionally, inmates "ha[ve] no constitutional right to any particular position of employment.  Hodges v. Jones, 873 F. Supp. 737, 745 (N.D.N.Y. 1995) (citations omitted).  Thus, Chaney could not demand his reinstatement as a law clerk or any other position as he had no right to due process in that regard.

Second, the reasons for which Chaney was removed from his position were investigated during various disciplinary hearings in which he received all process due.  Thus, to the extent that Chaney alleges "that he was removed from his position as a library assistant without a fair hearing . . . [it is to no avail because he] was afforded all of the procedural due process protection to which he was entitled."  Id.

Third, Chaney "does not allege that [Deleon was] deprived of assistance or access to

the courts; rather, [he] alleges that [Deleon was] being denied <u>his</u> legal assistance." <u>Id.</u>
"This allegation does not state a constitutional violation." <u>Id.</u> (citing <u>Smith v. Maschner</u>, 899
F.2d 940, 950 (10th Cir. 1990) ("Prison inmates do not possess the right to a particular
prisoner's help in preparing their legal materials, so long as prison officials make other
assistance available.") (citations omitted)).  Neither Chaney nor Deleon asserts that other
assistance was not available, only that Chaney was unable to assist Deleon.  Because
Deleon had no constitutional right to choose his inmate representative, his claim cannot
stand.

Accordingly, it is recommended that defendants be granted summary judgment as to
any liberally construed claims Chaney and Deleon have asserted on this ground.


### 2. Intentional Destruction of Property

As discussed <u>supra</u>, an inmate has a right not to be deprived of property without due
process.  However, federal courts do not provide redress for the deprivation of property if
there is an adequate state court remedy which the plaintiff can pursue.  <u>Hudson v. Palmer</u>,
468 U.S. 517, 533 (1984).  "New York courts provide such a remedy . . . [through the]
initiat[ion of] an Article 78 proceeding in New York Supreme Court . . . ."  <u>Gabis v. New York
City Taxi & Limousine Comm'n</u>, No. 05-CV-8083 (HB), 2005 WL 2560384, at *3 (S.D.N.Y.
Oct. 12, 2005); <u>see also</u> N.Y. C.P.L.R. §§ 7803, 7804; <u>see also</u> <u>Locurto v. Safir</u>, 264 F.3d
154, 174 (2d Cir. 2001) ("An Article 78 proceeding permits a petitioner to submit affidavits
and other written evidence, and where a material issue of fact is raised, have a trial of the
disputed issue, including constitutional claims.") (citations omitted); <u>Campo v. New York City</u>

Employees' Ret. Sys., 843 F.2d 96, 101 (2d Cir. 1988) ("Article 78 . . . provides a summary proceeding which can be used to review administrative decisions.").  State law also provides that "[a]ny claim for damages arising out of any act done . . . within the scope of . . . employment and in the discharge of the duties of any officer or employee of the department [of corrections] shall be brought and maintained in the court of claims as a claim against the state."  N.Y. Corr. Law § 24(2).

In this case, Chaney and Deleon contend that there were unconstitutional deprivations of (1) their legal documents which were allegedly confiscated and lost during transit and cell searches, and (2) Chaney's typewriter ribbons during a cell search for which they seek damages.  Third Am. Compl. ¶¶ 227, 230.  First, however, the Article 78 procedure exists.  Second, because Chaney and Deleon sue for damages, they must pursue their claims here against New York State in the New York Court of Claims pursuant to Corrections Law § 24.  Thus, the correct venue to litigate these claims is in state court.

Accordingly, defendants' motion for summary judgment should be granted as to this claim.

### 3. False Misbehavior Reports

Chaney and Deleon allege that defendants issued a false misbehavior reports in violation of their constitutional rights.  As discussed supra, an inmate has a right not to be deprived of a liberty interest without due process.  However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."  Freeman v. Rideout, 808

F.2d 949, 951 (2d Cir. 1986)).  "There must be more, such as retaliation against the prisoner for exercising a constitutional right."  Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988)).

As discussed supra, Chaney and Deleon have failed to establish facts sufficient to allege a retaliation claim.  Thus, the present claim must also fail.  Moreover, plaintiffs' claims here run afoul of the "favorable termination" rule of Heck v. Humphrey, 512 U.S. 477, 487-87 (1994).  That rule provides that if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages under § 1983.  This rule apples to challenges to procedures used in prison disciplinary proceedings.  Edwards. v. Balisok, 520 U.S. 641 (1997).  There is no evidence that plaintiffs' disciplinary determinations were ever vacated.  Therefore, because plaintiffs' recovery of damages here for a false misbehavior report would necessarily imply the invalidity of their convictions, the claim here cannot stand.

Accordingly, defendants' motion as to the false misbehavior reports claims should be granted.


## G. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "In order to establish an equal protection violation, the plaintiffs must show that they were

treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." <u>Myers v. Barrett</u>, No. 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.).  In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>Neilson v. D'Angelis</u>, 409 F.3d 100, 105 (2d Cir. 2005).

Here, Chaney and Deleon make multiple conclusory statements that their equal protection rights were violated.  However, they do not allege how they were treated differently than any other similarly situated inmate.  Their vague and conclusory allegations, are insufficient to show an equal protection violation.  <u>See</u> <u>De Jesus v. Sears Roebuck & Co., Inc.</u>, 87 F.3d 65, 70 (2d Cir. 1996).

Accordingly, defendants' motion should be granted as to this claim.

### H. 42 U.S.C. §1981

Section 1981 is a statement of equal rights, ensuring that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).

> To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce

42

contracts, sue and be sued, give evidence, etc.).

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

Chaney and Deleon have neither alleged nor proven the elements of this cause of action.  First, Chaney and Deleon do not disclose their race or races.  The only discrimination that they allege is based on their asserted homosexuality.  Third Am. Compl. ¶ 130.  However, § 1981 was enacted to protect racial minorities.  Thus, any discrimination which Chaney and Deleon allege based upon sexual orientation and not their race affords no basis for relief under this statute.

Accordingly, defendants' motion for summary judgment should be granted on this ground.


## I. Conspiracy

Chaney and Deleon allege that all defendants conspired together to violate plaintiffs' constitutional rights.

"Section 1985 prohibits conspiracies to interfere with civil rights."  Davila v. Secure Pharmacy Plus, 329 F. Supp. 2d 311, 316 (D. Conn. 2004). To state a claim for relief under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983); see also Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir. 2007).  To demonstrate that a conspiracy existed, "the plaintiff must prove a mutual understanding or meeting of the minds

43

to violate [his or] her civil rights." <u>Salgado v. City of N.Y.</u>, No. 00-CV-3667 (RWS), 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citations omitted).  "In addition, the conspiracy must be motivated by some class-based animus." <u>Iqbal</u>, 490 F.3d at 176 (citations omitted).

Here, Chaney and Deleon do not assert any facts giving rise to a conspiracy.  First, Chaney and Deleon vaguely assert conclusory statements relating to an alleged conspiracy among defendants.  This is insufficient.  <u>See X-Men Sec., Inc. v. Pataki</u>, 196 F.3d 56, 71 (2d Cir. 1999).  Second, there are no allegations relating to agreements, or even communications, between the  defendants, the purpose of their alleged conspiracy, or an intent by defendants to deprive Chaney and Deleon of civil rights.

Third, Chaney and Deleon broadly state that twenty-three defendants negligently failed to prevent the deprivation of their rights.  If any defendant "ha[d] knowledge that any of the wrongs . . . mentioned in section 1985 . . . [we]re about to be committed, and ha[d] power to prevent or aid in preventing the commission of the same, [and] neglect[ed] or refuse[d] so to do . . . , [he] shall be liable to the party injured."  42 U.S.C. § 1986.  However, "[a] claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." <u>Gagliardi v. Vill. of Pawling</u>, 18 F.3d 188, 194 (2d Cir. 1994).  No such viable claim exists here.

Accordingly, defendants' motion for summary judgment as to this claim should be granted.[16]

---

[16] Defendants also assert that any conspiracy claims are effectively barred by the intracorporate conspiracy doctrine.  Defs. Mem. of Law at 38.  However, because it is recommended herein that defendants' motion as to the conspiracy claim be granted on other grounds, the intracorporate conspiracy doctrine need not be addressed.

44

**J. Qualified Immunity**

Defendants claim that even if plaintiffs' constitutional claims are substantiated, they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights."  Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached concerning all of plaintiffs' claims except the Eighth Amendment excessive force claim because, as discussed supra, accepting all of plaintiffs' allegations as true, they have not shown that any of defendants violated their constitutional rights.

However, if it is determined that plaintiffs exhausted, or were excused from exhausting,

45

administrative remedies as to their excessive force claims, it was clearly established by February 6, 2004 that inmates had an Eighth Amendment right to be free from excessive force.  Thus, accepting all of plaintiffs' allegations about the physical assaults as true, qualified immunity cannot be granted to LaPier and Morehouse since a reasonable person in their position at the time would or should have known that the use of excessive force was a constitutional violation.

Accordingly, defendants are entitled to qualified immunity on all claims except the Eighth Amendment excessive force allegations against LaPier and Morehouse,  and their motion on this ground should be granted in part and denied in part accordingly.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1.  Defendants' motion for summary judgment (Docket No.228) be **GRANTED** in all respects as to all claims against all defendants <u>except</u> defendants Granger, Eustis, Seneca, and John Does 1-3;

2.  **DISMISSED** without prejudice as to all claims against defendants Granger, Eustis, Seneca, and John Does 1-3; and

3. This action be **TERMINATED** in its entirety as to all defendants and all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

REVIEW.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  September 26, 2008
        Albany, New York

_____
United States Magistrate Judge

47